15665

McINTOSH v. WHIELDON ET AL.
(30 S. E. (2d), 851)

120

*Messrs. Willcox, Hardee, Houck & Wallace,* of Florence, S. C., Counsel for Appellant,

*Mr. J. Frank Eatmon,* of Kingstree, S. C., Counsel for Respondent,

July 20, 1944.

Mr. Associate Justice Oxner delivered the Opinion of the Court:

On July 30, 1942, The South Carolina Public Service Commission issued to Joe E. Whieldon, a resident of Williamsburg County, South Carolina, hereinafter called the carrier, a modified Class D certificate of public convenience and necessity under the terms of the South Carolina Motor Carrier Act (Chapter 162, Sections 8507 to 8530, Vol. 4, Code of Laws of South Carolina of 1942), whereunder the carrier was authorized to furnish freight service, by means of motor propelled vehicles, over irregular routes, as follows: "Produce: From points and places in Williamsburg and Florence Counties to points and places in South Carolina and points and places out of South Carolina. Commodities in General: Between points and places in Williamsburg County, and between points and places in Williamsburg County and points and places in South Carolina."

On October 4, 1942, the Automobile Insurance Company of Hartford, Connecticut, issued to the carrier a cargo insurance policy covering the legal liability of the assured as carrier, for a period of one year, for loss or damage to produce and fertilizer transported by such carrier within a radius of one thousand miles of Kingstree, South Carolina. Attached to said policy is an endorsement complying with Rule 59 of said Commission.

On June 2, 1943, W. K. McIntosh, trading as McIntosh Feed and Seed Co., a resident of Williamsburg County, and hereinafter referred to as the shipper, delivered to the carrier a load of beans to be transported from Kingstree, South Carolina, to Baltimore, Maryland. While en route the vehicle was wrecked and overturned in the State of Virginia, resulting in said shipment of beans being damaged to the extent of $312.23.

This action was commenced by the shipper against the carrier and the insurer to recover the sum of $412.23, the loss which the shipper contends that he sustained as a re-

sult of the upset of the motor truck. The carrier filed an answer which, in effect, submitted his rights to the Court for determination. The Insurance Company demurred to the complaint and also filed an answer. The case was heard before the Circuit Judge, without a jury, upon the pleadings, certain exhibits and stipulation of counsel, who thereafter awarded judgment for the sum of $312.23 in favor of the shipper. The shipper sought to recover, in addition to the damage to the shipment amounting to $312.23, an item of $50.00 representing brokerage commissions and an item of $50.00 representing freight charges advanced, but these two items were disallowed by the Circuit Judge. From the judgment so rendered, the Insurance Company has appealed.

Counsel for appellant in their brief state the questions involved as follows:

"I. Is the policy one of liability permitting a direct action by a third party?

"II. Is the law of Virginia controlling as to the right of plaintiff to maintain an action on this policy?

"III. Did the Trial Judge err in failing to give effect to the co-insurance and deductible clauses?"

The answer to the first question necessitates an examination of the terms of the policy. The second and third paragraphs of endorsement No. 2 on the policy, which is the endorsement required by Rule 59 of the Public Service Commission in compliance with Section 8511 of the 1942 Code, are as follows:

"In consideration of the premium stated in the policy to which this endorsement is attached the Company hereby agrees to pay, within the limits of liability hereinafter provided, any shipper or consignee for all loss of or damage to all property belonging to such shipper or consignee, and coming into the possession of the Insured in connection with its transportation service, for which loss or damage the Insured may be held legally liable, regardless of whether the

motor vehicles, terminals, warehouses, and other facilities used in connection with the transportation of the property hereby insured are specifically described in the policy or not. The liability of the Company extends to such losses or damages whether occurring on the route or in the territory authorized to be served by the Insured or elsewhere in South Carolina.

"Within the limits of liabilty hereinater provided it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement by the Insured, shall affect in any way the right of any shipper or consignee, or relieve the Company from liability for the payment of any claim for which the Insured may be held legally liable to compensate shippers or consignees, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the Insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the Insured and the Company. The Insured agrees to reimburse the Company for any payment made by the Company on account of any loss or damage involving a breach of the terms of the policy and for any payment that the Company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement."

Appellant contends that said endorsement applies only in South Carolina and that the loss having occurred in Virginia, this endorsement cannot be considered in determining the rights of the parties under this policy. The trial Judge held that, apart from Section 8511 of the Code, under the terms of this endorsement liability extends to losses occurring anywhere in South Carolina and also those occurring on the carrier's route or territory without the State. He held that the last sentence in paragraph two, providing that "the

liability of the Company extends to such losses or damages whether occurring on the route or in the territory authorized to be served by the Insured or elsewhere in South Carolina," did not have the effect of confining the coverage to losses occurring within the State of South Carolina and that since the loss occurred on the route of the carrier, the endorsement applied notwithstanding the fact that the loss occurred on that portion of the route beyond the State of South Carolina. However, in the view we take of the case, we do not find it necessary to pass upon the correctness of the construction placed upon this endorsement by the trial Judge.

The only authority vested in the Public Service Commission to issue a certificate of public convenience and necessity is found in Chapter 162, Code 1942. So that in issuing the certificate to this carrier the Commission necessarily acted under the authority contained in this Chapter. Section 8511 of this Chapter makes it mandatory on the Commission in granting a certificate to require an applicant for transportation by freight to procure cargo insurance. In this case the Commission purported to grant a certificate authorizing the carrier to transport produce to points beyond the State. The power of the Commission to do so is not among the questions raised in this proceeding, if indeed it could be raised by appellant. Nor is any question raised as to interference with interstate commerce under the Federal Motor Carrier Act of 1935, 49 U. S. C. A., §§ 301 to 327. The appellant interposed as one of its defenses that this shipment was covered by the Act of Congress relating to interstate commerce, but the trial Judge stated in his order that this defense had been abandoned. We may assume, therefore, that because of the exemptions contained in Section 303 of the Federal Motor Carrier Act, or for some other reason, the Federal Motor Carrier Act is not involved. Accordingly, the case will be considered as if the Public Service Commission had the authority to do

what it purported to do in this certificate. Under these circumstances, the endorsement referred to must be construed in the light of the grant made in the certificate issued to this carrier. This grant authorized the carrier to transport produce to points without the State. We think that the endorsement should be considered as co-extensive with the grant contained in this certificate and would, therefore, extend along any route or territory which the carrier was authorized to serve by the Public Service Commission.

We do not undertake to pass upon the question as to whether ordinarily Section 8511 has any extra-territorial effect and refrain from expressing any opinion as to whether the endorsement in question can properly be considered as generally extending beyond the limits of South Carolina. It may be of interest to observe that the Federal Motor Carrier Act and those of most of the States have provisions similar to our Section 8511 requiring the carriers to provide cargo insurance.

If, as we have concluded, the quoted endorsement must be considered as applying along the entire route of this shipment, it is clear that under its terms a direct obligation by the insurer to the shipper is created and such endorsement constitutes an unconditional and absolute promise by the insurer to pay to the shipper any loss or damage to the cargo for which the carrier could be held liable. A similar policy was so construed in *William Atkin Co. v. National Liberty Ins. Co.,* 168 Misc., 334, 5 N. Y. S. (2d), 863. In the case of *Carolina Transportation & Distributing Co. et al. v. American Alliance Ins. Co.,* 214 N. C., 596, 200 S. E., 411, which involved a somewhat similar cargo insurance policy, it was held that such insurance was for the benefit of the owner of the goods, who may maintain an action directly against the insurer for any loss suffered.

Appellant, in support of its contention that a direct action cannot be maintained against it by the shipper, relies on a provision contained in the general terms of the policy to the effect that no action shall lie against the Company to recover for any loss unless the amount of such loss has been "definitely determined by final judgment after trial of the issue in an action against the assured." The quoted endorsement provides otherwise and under well-established principles supersedes any inconsistent provision contained in the general terms of the policy and in case of conflict, the endorsement controls.

It follows that the first question involved must be determined adversely to appellant. Under the construction which we have given the policy, it was proper under the practice prevailing in this State for the shipper to maintain an action jointly against the carrier and the insurer. *Piper v. American Fidelity & Casualty Co.*, 157 S. C., 106, 154 S. E., 106; *Benn v. Campbell City Coach Co. et al.*, 162 S. C., 44, 160 S. E., 135; *Andrews et al. v. Poole et al.*, 182 S. C., 206, 188 S. E., 860; and *Bryant v. Blue Bird Cab Co. et al.*, 202 S. C., 456, 25 S. E. (2d), 489.

The next question is whether the law of Virginia is controlling as to the right of the shipper to maintain an action on this policy. The trial Judge held that under the laws of the State of Virginia a shipper is not permitted to maintain an action directly against the insurer until he has obtained judgment against the insured. There was no appeal by respondent from this ruling of the lower Court. We, therefore, accept this as the law of Virginia without undertaking to pass upon that question.

In support of its contention that the law of Virginia is controlling, appellant relies principally upon the case of *Mobley v. Bland and Pennsylvania Casualty Co.*, 200 S. C., 448, 21 S. E. (2d), 22. That case involved a tort committed in North Carolina which grew out of a collision between

a truck of the plaintiff and a truck of the defendant Bland, who was a resident of Georgia. Under the North Carolina statute the insured and insurer could not be joined in an action by the injured party to recover damages. One of the questions involved was whether a suit in tort and one in contract arising in North Carolina could be joined in South Carolina in the face of a foreign statute to the contrary. Two members of the Court held that such joint action could not be maintained, resting their conclusion principally upon the construction that the North Carolina statute was not in its nature merely remedial and that the policy involved was one solely of indemnity against loss. Two other members of the Court held that the North Carolina statute pertained solely to the remedy and that the *lex fori* governed the remedy. The other member of the Court, Mr. Justice Baker, now Chief Justice, rested his decision for reversal on other grounds and found it unnecessary to pass upon the question of joinder. The question of whether the joinder of the insured and insurer is governed by the *lex fori* was not determined by a majority of the Court. In addition to this, the instant case and the *Mobley case* are clearly distinguishable on the facts. We have no statute of Virginia involved in this case. The policy involved is not one of indemnity against loss, but carries a direct obligation to the shipper. Both the shipper and the carrier reside in South Carolina. The contract of carriage was made in South Carolina. We think these circumstances clearly distinguish this case from the *Mobley case* and under the circumstances presented the question of joinder relates solely to the remedy and the remedy to be applied is that of this State. The case of *Andrews v. Poole,* 182 S. C., 206, 188 S. E., 860, tends to sustain the conclusion herein reached.

> The third and remaining question is whether we should give effect to the co-insurance and deductible clauses. If the co-insurance clause contained in the

general terms of the policy applies, appellant's proportionate share of the loss under the agreed stipulation of facts would amount to $135.57, and if there be further applied the $50.00 deductible clause, the net contractual loss under the policy would be the sum of $85.57. Appellant contends it is only liable in any event for the last named amount, which it has indicated a willingness to pay.

Under endorsement two of the policy, which we have quoted, the insurer is liable to the shipper for all loss or damage to the cargo for which the insured may be held legally liable, subject to the maximum limit of $1,000 stated in the endorsement. It is further provided that no stipulation or limitation contained in the policy shall effect in any way the rights of the shipper. However, any such stipulations or limitations are expressly stated to be binding between the insured and the insurer. The general terms of the policy provide that the insured shall reimburse the insurer for any payment made which the insurer would not have been obligated to make except for the endorsements required by law. We think it is clear that it was not the intention of the parties to apply the co-insurance and deductible clauses to the shipper or the consignee and as between the insurer and the shipper, the insurer is liable for the full amount of the loss subject to the maximum limit of liability contained in the policy. We are not concerned here with any adjustment of the relative rights between the insurer and insured.

Our attention is called in appellant's brief to the fact that at the time of this upset in Virginia, the truck transporting this cargo was not licensed. The license expired December 31, 1942, and was not renewed until June 30, 1943. The carrier had applied for a license, but it was not issued because he had not filed the public liability and property damage insurance required by law. We are unable to see where this circumstance has any bearing on the liability of appellant. The policy contains no provision excluding liability for this reason. Failure to furnish insur-

ance might have been a cause for the revocation of the certificate but the certificate was not thereby automatically revoked.

All exceptions are overruled and the judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE BAKER (in result), and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.